ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.* COY.

Opinion delivered June 1, 1914.

1. RAILROADS—NEGLIGENCE—SUFFICIENCY OF COMPLAINT.—Where plaintiff shipped watermelons by defendant carrier and traveled in the car with the same, and received an injury due to the alleged negligence of defendant, his complaint in an action against the rail-

road, will be held to state a cause of action when it alleges that plaintiff was a passenger on defendant's train. (Page 277.)

2. CONFLICT OF LAWS—NEGLIGENCE—LIABILITY—DAMAGES.—Plaintiff was injured by an accident on a railroad in Missouri, but brought suit in Arkansas. *Held,* the injury having occurred in Missouri, the laws of that State govern as to the liability, if any; but the remedy to recover damages on account of the injury must be pursued according to the laws of Arkansas, where the suit is brought. (Page 278.)

3. PLEADING—AMENDMENT TO CONFORM TO PROOF.—When a suit is brought in Arkansas on a cause of action arising in Missouri, the *lex fori* controls with respect to the pleadings and procedure, and under the law of Arkansas a complaint will be treated as amended to conform to the proof, although it could not be so treated in Missouri. (Page 278.)

4. CARRIERS—PASSENGERS—QUESTION FOR JURY.—When plaintiff shipped melons by defendant carrier, and traveled in the freight car with the same, it is a question for the jury, under the evidence as to whether plaintiff was a passenger. (Page 278.)

5. CUSTOMS AND USAGES—RAILROADS—SUFFICIENCY OF EVIDENCE.—Evidence held sufficient to warrant a jury in finding that it was the custom of a carrier to permit shippers of watermelons to ride in the box car with the same. (Page 279.)

6. CARRIERS—PASSENGER—PAYMENT OF FARE—DUTY.—Where plaintiff was permitted by a carrier to ride in a box car with a shipment of watermelons, which he was shipping, he will be treated as a passenger, although he had not paid any fare, and none was required of him by the carrier, and the carrier will owe him the highest degree of care consistent with the practical operation of the train which plaintiff accepts as the means and mode of transportation. (Page 281.)

7. CARRIERS—PASSENGER—NONPAYMENT OF FARE—DUTY OF CARE.—When a carrier permits a shipper of goods to ride in the box car with the goods, without the payment of any fare, the carrier will be held to owe him, in the absence of a contract on his part to the contrary, the same duty of care that it owes to one who is strictly a passenger, nor is the carrier relieved of his duty because plaintiff was being transported on an interstate trip in violation of the regulations of the Interstate Commerce Commission. (Page 282.)

8. CONFLICT OF LAWS—BURDEN OF PROOF—LAW OF THE FORUM.—On the question of the burden of proof the *lex fori* governs. (Page 284.)

9. CONFLICT OF LAWS—BURDEN OF PROOF—LAW OF THE FORUM.—Rules of evidence relate to the remedy, and are governed by the law of the *situs* of the remedy. (Page 284.)

10. Railroads—injury to passenger—negligence—sufficiency of evidence.—In an action for damages for personal injuries caused by the negligent operation of a train. the evidence held sufficient to warrant the jury in finding that the plaintiff was injured by a collision caused by the negligence of the defendant railroad. (Page 286.)

11. Carriers—freight trains—passengers—duty of care.—A carrier owes the same duty of care to passengers on freight trains that it owes to passengers on regular passenger trains. (Page 286.)

12. Evidence—answer to hypothetical question—opinion of witness.—In an action for damages against a railroad company for personal injuries, the answer of a physician to a hypothetical question, is not improper, where the physician undertook to state that in his opinion plaintiff's present condition could be attributed to such an injury as he claimed to have received, and where it did not appear that the witness was stating that the alleged act of. negligence was responsible for plaintiff's condition. (Page 287.)

13. Appeal and error—judgments—receivership—refusal of court to make receiver party.—Plaintiff was injured by the alleged negligence of defendant railroad company, and while an action was pending to recover damages caused by the injury, receivers were appointed by the Federal court for said railroad company, held, where the defendant suggested the receivership in the trial court and prayed that the prosecution of the suit should be stopped until permission was obtained to have the receivers made parties, and until the same was done, it was not error to overrule the motion and proceed to final judgment. (Page 288.)

14. Judgments—receivership—effect.—A judgment against a railroad, in the hands of a receiver, obtained without consent of the court appointing the receiver, and without the receivers being parties, is a lien upon the railroad company's property, but the lien and the right of its enforcement is subject to the receivership, and no action can be lawfully taken in its enforcement, which in any way interferes with the said receivership. (Page 288.)

15. Damages—permanent injury—amount.—A verdict of eighteen thousand dollars damages will not be held excessive, when plaintiff, a man of fifty-four, was injured by the negligence of defendant railway company, in such a way that he wholly lost his earning capacity and was rendered a helpless cripple. (Page 289.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans*, Judge; affirmed.

STATEMENT BY THE COURT.

Appellee was the plaintiff below, and alleged in his complaint that he was a citizen and resident of the State of Missouri, and that on the 17th day of August, 1912, he became a passenger upon one of defendant's freight trains for the purpose of being transported from Gibson, Missouri, to Mount Vernon, in the State of Illinois, and that on said day, and while the car in which he was a passenger was being switched from one track to another in the yards of the defendant at Chaffee, Missouri, the same was carelessly, negligently, and recklessly kicked and thrown against other cars standing upon the track, causing the plaintiff to be thrown down in the car in which he was riding, and the contents of the car, consisting of a lot of watermelons and the planks which held the melons in place, were thrown against him, mashing him against the car and injuring him very severely. He alleged that his injuries were occasioned by the negligence of the defendant railroad in this—that the agents and servants of the defendant who were engaged in switching the car in which the plaintiff was riding from one track to another, at Chaffee, Missouri, carelessly, negligently and recklessly, and without any notice to the plaintiff, kicked said car down the track and into other cars standing thereon, with great force and violence, breaking loose the fastenings which held and protected said melons, and crushing him, as aforesaid. As a result of this negligence, he alleged that he had sustained the following injuries: That his body was scraped and bruised; his arms were bruised; he was internally injured by being mashed; his right leg was paralyzed; his left hip injured, and his spine injured; and his nervous system shattered; from which injuries, together with the shock to his nervous system, he has been made sick, lame, nervous and disabled, and has continued to be in that condition from the date of his injury up to the present time, so that he is now a hopeless cripple and will remain so during the remainder of his life. He alleged that continuously since the time of his injury he has suffered

great and excruciating pain of body and anguish of mind, and will so continue to suffer throughout the remainder of his life, as a result of said injuries, and that he has wholly lost his capacity to perform manual labor and earn money, and that he has expended the sum of three hundred dollars for medicine and medical attention. Plaintiff prayed damages in the sum of forty thousand dollars.

The defendant company filed a suggestion in writing, stating that on the 27th day of May, 1913, in a cause pending in the District Court of the United States for the Eastern Division of the Eastern District of the State of Missouri, wherein the North American Company, a corporation, was plaintiff, and the St. Louis & San Francisco Railway Company, a corporation, was defendant, an order was made placing the defendant railroad in the hands of receivers, and this suggestion alleged that the defendant railroad was engaged in interstate commerce and operated a line of railroad through Missouri, Arkansas and Texas, and that said receivers were in charge of all of its property and were operating the same, and that on the 2d day of July, 1913, said receivers filed a copy of the bill of complaint, and the order of the court under which they were appointed and caused the same to be entered of record in the United States Court, Western District of Arkansas, Fort Smith Division, and stated that the receivers were operating within the said Western District of Arkansas by the approval of said court. It was alleged in this suggestion that the plaintiffs in the present case had not obtained leave of the United States Court in either of said districts to sue the receivers, and defendant moved the court to require the plaintiff to obtain leave of the court to prosecute this action and to require said plaintiff to make the receivers parties thereto. This motion was overruled, and defendant saved its exceptions.

The defendant filed an answer, in which it set up its suggestion of the receivership, and the court's refusal to order the receivers to be made parties. The answer contained a general denial of all the material allegations of

the complaint, and specifically denied that the plaintiff was a passenger at the time of his alleged injury, and it was denied that he had been injured.

The evidence upon the part of the plaintiff was to the effect that he lived near Gibson, Missouri, and on the 17th of August, 1912, shipped two carloads of watermelons from that place to Mount Vernon, in the State of Illinois; that one of these cars of melons was sealed, but he took passage in the other car with the intention of peddling melons at all of the stations along the line of the railroad to his destination. He had a man prepare, under his directions, a partition in the unsealed car to hold the melons in each end of the car, leaving a passageway between for his occupancy and in which to sell his melons. He had three planks nailed up on each side, and the space reserved between was the width of the doors, and this space was all open. He took with him a washpan, a glass, towel, bucket, lantern and a chair, with the expectation of occupying this car until he arrived at his destination. He took passage at Gibson in the afternoon, and arrived at Chaffee, Missouri, the following morning, after having spent the night in the car. There were a number of other shippers of melons in this train, and it appears that they, too, traveled in, and occupied during the night, the cars in which they were shipping their melons.

The proof is conflicting in regard to the custom of melon shippers thus to use and occupy the cars containing their melons. Appellee testified that this was the second shipment of melons that he had made, and that on his first shipment he had not been permitted to ride in the car containing his melons, because he had not obtained a peddler's license at the time the bill of lading for the car was issued, but that other shippers having cars of melons in that train were permitted to ride in their cars, and he was told at the time that that privilege would thereafter be accorded him if he asked and secured a peddler's license from the company, when he secured his bill of lading. Appellee testified that when he made this

second shipment the station agent at Gibson handed him his bill of lading with the remark, "This is your peddler's license. If you had had that before, you would not have had any trouble." What was called the "peddler's license" consisted of an endorsement written by the agent upon the face of the bill of lading in the following language: "Peddler's privilege of going in local, man in charge." Appellee testified that he paid $42.50 for transporting this one car of melons, but he did not understand that his peddler's privilege had cost him anything extra. He further testified that he occupied his car openly, without any attempt to conceal his presence there, and the use he was making of the car, and he says that all other shippers in that train did the same, and that he assumed that his right to thus use and occupy his car was unquestioned, and was known to all of the train crew, and that neither the conductor, nor any one else, demanded any fare of him, or intimated that there was any impropriety or breach of the company's rules in traveling in his car. He further testified that the train which brought him to Chaffee, Missouri, was broken up there, and that the cars of melons were shipped to different points. He states that before this was done he and certain other shippers left their cars to secure breakfast, and that he hurried to return to his car, to be "on duty," as he expressed it, for the purpose of selling his melons and being in his car when the railroad company was ready to ship it out. He stated that after returning to his car he was sitting in the door, with one foot over a plank which he had nailed across the door,, and that he was on the left-hand side of the car, at the time the engine fastened to his car, and that as the car moved forward he was riding backward; and he stated that he looked out of his car and saw the engineer looking him in the face and that he was only half the length of the car from him; that the engine started and ran rapidly (the proof on the part of the plaintiff being that the rate of speed was about fifteen miles an hour at the time it collided with the other cars), and that he thought they

were about to transfer his car around to the right track to attach it to the train of which it was to become a part. He describes the collision as follows:

"He started running fast, and I sat there and looked at him until I seen my two cars—saw him shove me on and stop. When he did that I turned my head and looked back to see where I was going, and just as I turned my head the two cars hit a string of cars up there, then there were a few minutes I did not know anything; do not know whether it was two minutes, three minutes or four minutes. The engine was gone; nobody else in sight of me that I could see. When the jar came, it throwed all the melons away from the end, and there was a four-foot space there where there was not a melon. They were piled in the car in this space around me, and the two top planks that was nailed good and solid both come off. The bottom one that was put in behind these notches on the door pulled loose and caught that leg in that shape (indicating) and threw it under the chair (indicating). The chair was sitting against this back partition. When I came to I could not do anything. My knee was holding all the weight; could not get up; made an attempt and could not move. Hip was pressed back here against the chair, and the chair against the partition. I went to throwing busted melons out as fast as I could. About the time I got the plank loose the boys came down and they went to work and throwed out the rest of the melons—a lot of them. Saw a brakeman make two or three steps to catch the car, but he stopped and let it hit; he could not catch it."

Other shippers of melons in the train containing appellee's car testified that they were occupying their cars as appellee did his, and that they not only traveled in their cars betwen the stations but occupied them at night. It was evidently appellee's intention to peddle out one of his cars of melons *en route* to Mount Vernon, and to have the other car of melons for sale there.

Appellee claims to have been very seriously injured, and to have suffered great pain and anguish as a result

of his injury, and that his pain was so incessant and excruciating that he was unable to sleep at nights, and that his rest was always broken, and that he had wholly lost his capacity to perform labor and earn money. He was corroborated as to the extent of his injuries and the severity of his sufferings by Dr. Carl R. Bentley, of the city of Little Rock, and by a Dr. W. L. Parchman, a practicing physician residing at Van Buren, Arkansas. Doctor Bentley testified that he first examined appellee about six months after the injury, in January, and that he examined him again in June, and had examined him again the day before the trial of the case, and that his condition was much worse at the time of the trial than it was when he made the first examination of him in January; that appellee had an organic, or permanent, nerve injury, as indicated by the absence of the reflexes and the constant movement of the limb, testifying that if the limb was affected from some diseased condition of the nerve other than an accident there would not be the movement that obtains. This doctor further testified that appellee was permanently injured, and that he did not believe he would ever get better, but, upon the contrary, would continue to grow worse; that the injury was in the sacrum, involving the sciatic nerve and other nerves that supply the lower extremities. Appellee claimed that there was a loss of sensation in certain portions of his leg, and permitted pins to be stuck in that part of his leg without flinching, and claimed that he experienced no pain when this was done.

The evidence upon the part of the appellant was that there was no rule of the company which permitted shippers of melons to ride in any car, except in the caboose, which was provided for that purpose, and that, although the shippers in the train carrying appellee's melons did, in fact, travel in their cars, that there was no custom to that effect, and that if such practice had been previously indulged in, this had been done without the knowledge or consent of the conductors in charge of the trains. The station agent at Gibson denied that he had told appellant

he could ride in his melon car, but stated that he told him, if he desired to do so, he would have to obtain the permission of the conductor. Appellant denied that there had been any collision, and offered the evidence of one of the melon shippers, who stated that he was on the train with appellee and was on the track right by the side of his car, and about three lengths behind him, and that he did not hear any collision and was satisfied none had occurred. A physician who resided at Chaffee testified that he was the local surgeon for the appellant company at that place, and that he was called to examine appellee shortly after the collision, when he claimed to have been injured. He testified that he found no serious trouble and administered some simple treatment, and that he never made any report of this injury, and his treatment, because he regarded it as of no importance and the injury sustained as too trifling to require a report. Other physicians testified that they had examined appellee and that, in their judgment, he was malingering, and that there was no necessary connection between the troubles of which he complained and the injury which he said he had received.

*W. F. Evans* and *B. R. Davidson,* for appellant.

1. The petition fails to state a cause of action. 240 Mo. 48, and cases cited; 231 Mo. 605-614; 225 Mo. 478; 223 Mo. 649; 217 Mo. 83; 193 Mo. 194; 169 Mo. 388; 163 Mo. 372-375; 154 Mo. 204; 52 Mo. 333; 97 N. Y. 370.

Under the Missouri practice, even though the petition was not demurred to, yet it may be attacked at any stage of the proceedings, even in the appellate court. 193 Mo. 547; 164 Mo. App. 565.

2. Under the circumstances set out in the record, appellee was not a passenger, and appellant owed him no other duty than to refrain from wilfully or wantonly injuring him. 219 Mo. 553; *Id.* 65; 197 Mo. 119; 176 Mo. 598; 169 Mo. 592; 167 Mo. 206; 159 Mo. 143; 157 Mo. 477; 128 Mo. 64; 126 Mo. 565; 143 Mo. App. 393; 149 *Id.* 648; 166 *Id.* 639; 40 Ark. 298; 49 Ark. 360; 5 S. W. 568; 76

Ark. 106, 88 S. W. 836; 97 Ark. 137, 133 S. W. 841; 42 S. W. 855; 93 S. W. 104; 114 Fed. 123; 48 N. E. 294.

3. Instruction 1 is flagrantly wrong, contrary to the elementary principles of law. If appellee was not technically a passenger, he was no passenger at all.

There is nothing in the record proving or tending to prove that the crew in charge did not discharge their duties on this occasion in the usual and ordinary way and without any negligence. The doctrine *res ipsa loquitur* was not applicable. 195 Mo. 104; 165 Mo. 612; 148 Mo. 139; 130 Mo. 136; 53 Mo. App. 466; 94 *Id.* 289; 98 *Id.* 494; 101 *Id.* 54; 113 *Id.* 636; 147 *Id.* 332; 144 Ill. 261, 33 N. E. 204; 172 Mass. 73, 51 N. E. 450.

The instruction is based upon *general* negligence, whereas, appellee pleads and relies upon *specific* negligence, and must recover, if at all, under his specific charge. 202 Mo. 576; 143 Mo. App. 176, and cases cited.

4. Where a plaintiff's own evidence discloses that he was guilty of contributory negligence, an instruction is erroneous which places the burden upon the defendant to prove such contributory negligence. 207 Mo. 408; 204 Mo. 638; 203 Mo. 406; 197 Mo. 217, 218; 196 Mo. 571, 572; 192 Mo. 142; 191 Mo. 232; 141 Mo. 439, 440; 126 Mo. 670, 671; 112 Mo. 434, 435; 108 Mo. 487; 67 Atl. 635, 636; 79 N. E. 503.

5. In permitting the witness Doctor Bentley to give his opinion as to whether the negligent acts complained of produced the alleged injuries appellee claimed to have sustained in the act, the court permitted the witness to invade the province of the jury, as it was their duty to determine whether the original negligence had anything to do with appellee's condition at the time of the trial. 249 Mo. 195; 240 Mo. 338, 339; 208 Mo. 202; 191 Mo. 347, 348; 285 Mo. 239, 240.

*T. M. Seawell* and *Davis & Pace,* for appellee.

1. The *lex fori* governs as to the pleadings and procedure, and if the complaint was defective in stating a conclusion, it will be regarded as amended to conform to the proof, and is sufficient after judgment. 81 Ark. 373,

and cases cited; 134 Mo. App. 282-289; Minor on Conflict of Laws, § § 207, 208; 106 U. S. 124; 91 U. S. 406, 31 Cyc. 45; 32 Am. & Eng. Enc. of L. 1383; 22 Ark. 356; 49 Ark. 287; 64 Ark. 29.

2.   Appellee was a passenger upon the freight train, and appellant owed him the duty as such at the time of the collision.  He was entitled to protection as a passenger, even though he paid no fare and was being transported free of charge.  Moore on Carriers, 570; 5 Am. & Eng. Enc. of L., 507, 508; 6 Cyc. 544; 103 Ark. 332; 58 N. Y. 126; 52 N. J. L. 169; 68 Mo. 340; 30 Minn. 126; 2 White on Pers. Injuries, 829; 227 U. S. 601.

The question whether appellee was a passenger was submitted to the jury, and its finding, being supported by the evidence, is binding upon this court.  105 Ark. 320.

A passenger upon a freight train, according to the authorities relied on by appellant, assumes the ordinary risks created by that mode of conveyance, such as the ordinary and usual jars and jerks of the train.  If they are the ordinary and usual kind, there is no presumption of negligence, but if unusual and extraordinary, the doctrine *res ipsa loquitur* obtains, and a collision or derailment is *prima facie* evidence of negligence.  89 Ark. 82; 76 Ark. 520; 83 Ark. 22; 90 Ark. 494; 95 Ark. 220; 94 Ark. 75; 113 Mo. App. 636; 53 *Id.* 462-465; 84 *Id.* 498.  Being purely a collision, due to the car being shunted or thrown too far, and to a point where other cars were standing, negligence will be presumed, even though the engineer was not aware of the presence of appellee in the car.  34 Ark. 613; 90 Ark. 485; 95 Ark. 310.; 58 Ark. 454; 56 Ark. 594; 195 Mo. 104; 149 *Id.* 648-652; 84 *Id.* 498; 9 *Id.* 478; 122 *Id.* 405; 132 *Id.* 143; 153 *Id.* 462-465; 147 Mo. App. 345.

3.   Instruction 1 correctly declares the law as applicable to the facts in this case.

Appellant's objection that the instruction is erroneous because, based upon general negligence, is not well taken.  The *lex fori* governs as to procedure, and the Missouri doctrine that a charge of specific negligence can

not be established by proof of general negligence, does not prevail in this State. But even under the Missouri doctrine the instruction is good, because the case was tried upon the amended complaint, which charged general negligence, and a collision is *prima facie* evidence of that fact. 222 Mo. 104; 219 Mo. 470; 140 Mo. App. 421; 153 *Id.* 35; 143 *Id.* 643.

4. Doctor Bentley was only requested to give his opinion as to the cause of appellee's present condition. It was not necessary for him to state that the present condition of appellee was the result of the particular injury. The question as propounded was correct, and though the answer might have been improper, it was incumbent upon appellant to move that the answer be excluded, before it could urge the alleged error here. If the hypothetical question was improper upon the ground urged by appellant, it was harmless, because the same character of evidence had been, and was subsequently, admitted without objection. 96 Ark. 52; 87 Ark. 396; 103 Ark. 183; 96 Ark. 7; *Id.* 52; 86 Ark. 23; 82 Ark. 447; 83 Ark. 331.

Smith, J., (after stating the facts). Appellant says the petition fails to state a cause of action in that it alleges merely that appellant was a passenger upon one of the trains of appellant company, and that the remainder of his complaint shows that appellant was riding in a box car with some watermelons, which he was shipping in a freight train, and that the complaint fails to allege the payment of fare; or the possession of a pass; or any authority to ride upon the train, and that there was nothing in the complaint to show why in any event he did not ride in the caboose where passengers were carried and were expected to ride. And being in a freight car under such circumstances, no presumption obtains in his favor and the complaint should affirmatively show either an express or implied contract which authorized him to ride in said car as a passenger at the time and place of the accident. Appellant states the law of Missouri to be that pleadings are not considered amended to correspond with the proof,

and that although the complaint was not demurred to, yet, if it fails to state a cause of action, it may be attacked on that account at any stage of the proceedings, even in the appellate court. Appellee concedes that such is the law of Missouri; but it does not follow on that account that the judgment must be reversed because of the insufficiency of the complaint. The complaint does not fail to state a cause of action, nor does it even state one defectively, as it states unequivocally that appellee was a passenger at the time of his injury, and that he was injured by the negligent operation of appellant's train of cars. A motion to make the complaint more definite would not have been an improper motion, and, had such motion been made, the court should have required appellant to allege how the relation of passenger and carrier was created, and he should have been required to state in his complaint his authority for being in the car at the time of his injury. But no such motion was made, and proof was offered without objection, showing the circumstances under which appellee entered the car and the facts upon which he based his claim of being a passenger, and his right to be protected as such.

The injury having occurred in the State of Missouri, the laws of that State govern as to the liability, if any; but the remedy to recover damages on account of this injury must be pursued according to the laws of this State, where the suit was brought. *Pritchard* v. *Norton,* 106 U. S. 124; *Public Parks Amusement Co.* v. *Embree-McLean Carriage Co.,* 64 Ark. 29. As the *lex fori* controls with respect to the pleadings and procedure, the complaint will be treated as amended to conform to the proof.

Appellant strenuously urges that appellee was not a passenger at the time of his injury, and it insists that this is true because he had paid no fare, and expected to pay none, and had no pass, and had not been authorized by the conductor, or any other person with authority, to ride in the melon car, and that if appellant had any right to ride upon the train as a passenger without the payment of fare, he should have ridden in the caboose at-

tached to the train and provided for that purpose. And appellant urges that no one with authority could authorize or did authorize the appellee to ride in his melon car, and that there was no custom to that effect.

But these were questions of fact for the jury. Appellee insists that he had paid fare, and that his fare was included in the freight charged him upon the issuance of the bill of lading, and that the appellant company knew the purpose of the shipment of these melons, and to this end endorsed upon his bill of lading the writing, which was in effect a license to appellee to ride in his car and to peddle his melons during the various stops of the train. We think there was sufficient proof to support the finding upon the part of the jury that a custom to this effect existed upon the lines of appellant's railroad. Appellee had two cars of melons in the train, and there were about six other shippers having cars of melons in this train, and all of them were permitted to occupy their cars as appellant did, and no questions were raised or objections made on that account. There was proof of previous similar shipments, although this was only the second shipment made by appellee, and in his first shipment he was not permitted to ride in the car with his melons; but as has been stated, appellee said that this permission was refused to him because he had not procured from the station agent at the point of shipment, a license or a permission to enter his car and peddle his melons; but that other shippers in that train who had procured this permission were accorded that privilege.

Objections were made and exceptions saved to each of the instructions given on motion of appellee. Among other instructions given was the following, numbered 1:

"1. In this case, if you find by a preponderance of the evidence that plaintiff J. L. Coy was really, though not technically, a passenger upon the train of the defendant, and, while such passenger, was injured without fault on his part, and when he had not assumed the risk, by reason of the car in which he was riding, colliding with other cars upon defendant's track, this is *prima facie*

proof of negligence on the part of the defendant, and would justify a recovery upon the part of the plaintiff, unless the defendant shows by a preponderance of the evidence that said injury occurred without negligence on its part.''

Appellant says this instruction is erroneous because the evidence does not raise any question for submission to the jury, as to appellee's being a passenger, and for the reason further that it permitted the jury to find that appellee was really, but not technically, a passenger, whereas, it says, if he was not technically a passenger, he was not a passenger at all. And it states further, that as this was an interstate shipment, appellant was not a passenger because the freight rates which had been approved by the Interstate Commerce Commission, did not provide for the carriage of appellee with his melons, and that he violated the law authorizing the fixing of such rates, and that being thus unlawfully upon the train, he can not claim that he was a passenger.

But it has been held in many cases that one may be a passenger though he has not paid any fare as such, and though he does not ride in any car or coach specially provided for the use of passengers. In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Loyd*, 105 Ark. 340, it was said: ''Appellee adduced testimony tending to show that where a person shipped a car containing live stock over appellant's road, it was the custom of appellant to permit a caretaker in charge of the live stock to ride free, and this much is conceded by appellant. Therefore, appellee was a passenger, notwithstanding he rode free. *Little Rock & Fort Smith Ry. Co.* v. *Miles*, 40 Ark. 298.'' And it is also settled that one not technically a passenger may yet be a passenger in fact. In the case of *St. Louis & S. F. Rd. Co.* v. *Kitchen*, 98 Ark. 507, the facts were that Kitchen was a tie inspector for the Chicago, Rock Island & Pacific Railway Company, and was riding on one of defendant's trains in the State of Oklahoma, which was engaged in loading on its cars for transportation, railroad ties, along the line of its road, which were the

property of the Rock Island road. As the ties were loaded for transportation, Kitchen inspected and counted them for his employers. He was allowed to ride on the train as it traveled from place to place for the purpose of picking up the ties; but he paid no fare. This particular train did not carry passengers, but was engaged exclusively in hauling the railway ties. There was a box car in the train called the office car, which was fitted up with desks, etc., for the use of men in their work in connection with the shipment of the ties; also with beds, where men, including Kitchen, slept. There was also a caboose attached to the train. In that case it was insisted that Kitchen was not a passenger and that defendant owed him no duty except the negative one not to wantonly injure him, and it was there said: "In support of this contention they stress the fact that Kitchen did not pay any fare, and was not asked to pay fare, and that, in order to constitute himself a passenger, he must have tendered himself as such to be carried upon a train dedicated to the carriage of passengers, and must have been accepted by one who was authorized to receive passengers. We do not think this contention is a sound one. According to the undisputed evidence, Kitchen was permitted to ride on the train for the purpose of performing service for his employer, the Chicago, Rock Island & Pacific Railway Company, for whom defendant company was then engaged in transporting railroad ties. He represented his employer, the shipper, and must be treated in the same light as if he, himself, was the shipper, and, as a part of the contract of carriage, was permitted to ride for the purpose of shipping his commodity. His relations with the defendant as a carrier were much the same as that of a shipper of cattle, riding on a drover's pass, or as that of an express messenger or railway mail agent who is being transported by the carrier under contract with its employer. Under such circumstances, this court, and all other courts which have passed upon the question, so far as we are advised, have held that, while such a person is not, technically, a passenger, the carrier owed him the

same duty as if he were a passenger, that is to say, the highest degree of care consistent with the practical operation of the train which he accepts as the means and mode of transportation. *Little Rock & Fort Smith Ry. Co.* v. *Miles,* 40 Ark. 298; *Fordyce* v. *Jackson,* 56 Ark. 594; *Voight* v. *B. & O. S. W. Ry. Co.,* 79 Fed. 561.''

In 2 Hutchinson on Carriers, § 1018, it is said: ''It seems that if the person who is injured by the negligence of the employees of the carrier is lawfully upon its conveyance, even though he is not strictly a passenger, he will be entitled, in the absence of a contract on his part to the contrary, to the same care and diligence for his safety as one who is strictly a passenger.''

Nor does the fact, if it is a fact, that appellee was being transported in the car of melons in violation of the Interstate Commerce Commission's regulations, defeat his right to a recovery, nor is the carrier excused on that account from exercising the proper degree of care to appellee under the circumstances. In the case of *Southern Pacific Company* v. *Mary R. Schuyler,* 227 U. S. 601, the facts were that the plaintiff's intestate was riding upon a pass on an interstate trip in violation of the Hepburn act of June 29, 1906, and it was there urged that plaintiff's intestate was not a passenger, and the carrier owed no duty as such. But in discussing that question, it was there said (to quote the syllabus): ''An employee in the railway mail service who, in good faith and with the consent of the carrier, accepts when off duty a free passage in interstate transportation, does not forfeit his right to the benefit of a rule of the local law which charges a carrier with the duty to exercise care for the safety of gratuitous passengers, because his gratuitous carriage may have been forbidden by the Hepburn act of June 29, 1906, since that statute itself fixed the penalty for violations of its prohibitions, by declaring that the carrier and passenger shall, in such cases, be deemed guilty of a misdemeanor, punishable by fine.''

The court also gave, at the request of appellee, an instruction numbered 2, which read as follows:

"2.  The court instructs the jury that if you find
that the plaintiff was a passenger upon the defendant's
train, as above explained, and was injured without fault
on his part, and when he had not assumed the risk by rea-
son of the car in which he was riding colliding with other
cars of the defendant upon its track, then in that event
to avoid liability, the defendant must show by a prepon-
derance of the evidence in the whole case, that the col-
lision did not occur by reason of any negligence upon
its part."

It is urged that this instruction, as well as instruc-
tion numbered 1 heretofore set out, imposes upon appel-
lant a higher degree of care than it was required to exer-
cise under the laws of Missouri, in the operation of
freight trains carrying passengers, and that the instruc-
tions permitted a recovery to be had upon mere proof of
injury, provided appellant failed to show that the collision
did not occur as a result of one of the ordinary jerks or
jars incident to the operation of freight trains carrying
passengers.

In the case of *Ray* v. *Railroad,* 147 Mo. App. Rep. 332,
the court said:  "The law govering the liability of rail-
road companies for an injury to a passenger on a freight
train by oscillations of the train has been expounded in
numerous decisions in this and other jurisdictions.  A
person who takes passage on that kind of train, assumes
the risk of injury from such jars and movements as are
incident to its operation, if its parts are well constructed
and in good repair, and it is properly operated on a safe
track; but does not assume the risk of injury from faults
in either of those matters, or perhaps kindred ones which
an experienced railway man could enumerate, but we can
not."  And further it was there said:  "Taking into con-
sideration the oscillations and jerks commonly and neces-
sarily incident to the movement of a freight train, and
that this train was getting under full speed, we hold the
mere fact that plaintiff was thrown off by a jerk did not
warrant the conclusion of defective track or train appli-
ances, or negligent operation, in other words, the doctrine

of *res ipsa loquitur* does not apply. This is the necessary result of the cases cited *infra,* wherein it was held the evidence for the plaintiffs did not entitle them to a decision by the jury.''

An instruction in this case told the jury that there was no complaint of negligence on account of defective track, or train appliances, and that appellee predicated his right to recover solely upon the negligent operation of the train.

Under the laws of this State the presumption of negligence upon the part of the carrier arises where the proof shows that the party injured was a passenger upon any kind of train, and was injured by the operation of the train. But it appears such is not the law in the State of Missouri, where the proof shows there was only such oscillations and jerks as are commonly and necessarily incident to the movement of the freight train; as the proof must go further and show something in the shock of stopping, starting or running the train in the way of displacement of inanimate objects, or persons in secure positions, as to bespeak careless operation, and appellee says as there was no such proof in the present case, that there was no presumption of negligence and the instructions set out were therefore erroneous and prejudicial. On the question of burden of proof the *lex fori* governs, and the rule is stated in Minor on Conflict of Laws, page 486, as follows: ''But if the rule prescribed by the *lex delicti* with respect to the defendant's negligence is a mere rule of evidence, such as rules respecting the burden of proof touching negligence, the *lex fori* will govern, not the *lex delicti,* in accordance with the general principle that rules of evidence relate to the remedy, and like all matters of that character are regulated by the law of the situs of the remedy (*lex fori*). See, also, 2 Wharton on the Conflict of Laws, 1107. The evidence offered by appellee was to the effect that the car upon which he was riding was switched against other cars at a rate of fifteen miles an hour, and that a number of melons were crushed and piled upon him, and as a result of this collision the mel-

ons were thrown away from the end of the car and a clear space of several feet was left, and the boards which had been securely fastened to keep the melons in place were torn loose. This evidence, if true, would warrant the jury in finding that appellee was injured as the result of a collision, and not through such impact of his car against another car, as might reasonably be expected to occur in the ordinary operation of freight trains.

The court gave several instructions defining the duty of carriers in the operation of freight trains, on which passengers were carried, and defining the risk of injury which the passenger assumes from the operation of such trains. An instruction on this subject which was asked by appellant, and was numbered 4, read as follows:

"4. A railroad company, as a rule, can not be said to be negligent because there are occasional jars and jerks in the operation of freight trains. Though jars of great, unusual and unnecessary violence would be evidence of negligence on the part of employees operating the trains, jars are common to such trains and the passenger must guard against them, and not unnecessarily expose himself to danger from such jars."

This was modified by the court and given as follows:

"4. A railroad company, as a rule, can not be said to be negligent because there are occasional jars and jerks in the operation of freight trains. Though jars of great, unusual and unnecessary violence would be evidence of negligence on the part of employees operating the train." Appellant complains of this modification.

In the case of *Hedrick* v. *Missouri Pacific Ry. Co.*, 93 S. W. 268, in discussing the liability of a carrier for injuring a passenger riding in a caboose, it was said (to quote the syllabus): "A carrier was not liable for injuries to a passenger riding in a caboose, owing to the jar on the stopping of the train, where the jar was not sufficient to throw the passenger from his feet, and there was no evidence of any defect in the construction of the roadbed or train, or of any negligence in the management thereof." And further in this opinion, in discussing the

risk assumed by the passenger, it was said: "It seems now to be well settled law here, as elsewhere, that where a railroad carries passengers for hire on its freight trains, it must exercise the same degree of care as is required in the operation of its regular passenger trains; the difference only being that the passenger submits himself to the inconvenience and danger necessarily attending that mode of conveyance." *Vide* cases cited by Brace, P. J., in support of this proposition, 65 S. W. 1030. In that case this court adopted the law as announced in *Chicago & Alton Rd. Co.* v. *Arnol,* 144 Ill. 261; 33 N. E. 204; 19 L. R. A. 313, as follows: "Persons taking passage upon freight trains, or in a caboose or car attached to a freight train, can not expect or require the conveniences, or all of the safeguards against danger, that they may demand upon trains devoted to passenger service, and are accordingly held to have accepted the accommodation provided by the company, subject to all the ordinary inconveniences, delays, and hazards incident to such trains when made up and equipped in the ordinary manner of making up and equipping such trains, and managed with proper care and skill. * * * But, if the railway company consents to carry passengers for hire by such trains, the general rule of responsibility for their safe carriage is not otherwise relaxed. From the composition of such trains and the appliances necessarily used in their efficient operation, there can not in the nature of things, be the same immunity from peril in traveling by freight trains, as there is by passenger trains; but the same degree of care can be exercised in the operation of each. The result in respect to the safety of the passenger may be wholly different, because of the inherent hazards incident to the operation of one train and not to the other, and it is this hazard the passenger assumes in taking a freight train, and not the hazard and peril arising from negligence or want of proper care of those in charge of it. So long as there were dangers naturally incident to the running of freight cars and a passenger car in the same train, the parties must have been presumed to have

contracted in reference to them, and the plaintiff to have assumed them.''

It is urged on the part of appellant that the witness, Doctor Bentley, who testified as an expert witness on behalf of appellee was permitted to submit his judgment and opinion for that of the jury as to the cause of appellee's injury. Such evidence, of course, would be improper, and would call for a reversal of the case, if it had been permitted to be offered over appellant's objection. *Castanie* v. *Railroad Company*, 249 Mo. 195. But we do not think that was permitted to be done in the present case. The witness was asked the following hypothetical question: ''Q. I will ask you to state to the jury, if, previous to the 17th day of August, 1912, he had always been a strong man physically, and if, on that day, he was riding in a car that collided with other cars in a violent manner, hurling melons and planks upon him, the plank striking him across the front of the knee, as indicated, and the melons and planks crushing and mashing him at the time, and that within a few days he was compelled to go to bed for a period of seven weeks; that during all of this time, the right leg pained him, paining him so severely at times that he was unconscious, and that within three weeks this trembling condition in his leg set up, what would you conclude from that was the cause of his present condition?''

Upon asking that question, the following colloquy took place:

*Mr. Davidson:* If the court please, I don't think that is competent. I don't think his question is competent, the hypothetical question that he places, that he has stated.

*The Court:* Let him answer.

*The Witness:* I think it would come from the injury.

Q. You think his injury now could be attributed to such an injury received at that time?

A. Yes, sir.

It thus appears that Doctor Bentley was informed in this hypothetical question as to the history of the case. No request was made that the evidence be excluded, and

to answer this question the witness was not required to state that appellee's present condition was the result of the particular injury. He was only requested to give his opinion as to the cause of his present condition, and if his answer was an improper one, no objection appears to have been made to it, and no request was made that it be excluded. It was not improper for the witness to state that in his opinion appellee's present condition could be attributable to such an injury, as he claimed to have received, and it is apparent that this is the question which the witness was attempting to answer; and that there was no attempt to have him state that the collision was responsible for appellee's condition.

Various objections were made and exceptions saved to the action of the court in giving and refusing other instructions; but we consider it unnecessary to discuss these exceptions.

It is insisted that the suit be abated because appellee did not secure permission from the court in which the receivership was pending, to maintain this suit. But there was no request on the part of the receivers that they be made parties to this litigation, and the judgment of the court does not attempt to adjudicate their rights to the control of appellant's properties. The motion which was filed was a mere suggestion to the court that a receiver had been appointed to take charge of appellant's railroad properties, and this suggestion contained the prayer that appellee be not permitted to proceed with the prosecution of his suit until this permission should have been obtained and the receiver made a party. The injury occurred and this suit was pending for trial prior to the appointment of the receivers, and there was no attempt to fix upon these receivers, as such, any liability for appellee's injury. This judgment can not and does not affect the right of the receivers to the control and possession of appellant's property, and while appellee has the statutory lien upon appellant's properties to secure the enforcement of this judgment, this lien and the right to its enforcement is subject to the receivership, and no

action can be lawfully taken in its enforcement, which in any way interferes with the said receivership.

It is lastly insisted that the verdict which was for eighteen thousand dollars, is excessive and such is the case if appellant's witnesses are to be believed. Expert witnesses have testified on appellant's behalf that there was no necessary connection between the injury inflicted upon appellee at the time of the collision and his present condition. Indeed, these witnesses testified that appellee was malingering. But the evidence upon the part of appellee is in sharp conflict with this evidence, and the jury has passed upon this conflict. According to the evidence of Doctors Bentley and Parchman, appellee's condition is very serious, and he will not improve. According to them the injury to the sciatic nerves has produced a nervous condition which results in appellee's leg being constantly in violent motion and entirely beyond his control, so that there is a never ceasing trembling of the limb, which interferes with his rest and sleep, and from which he is constantly suffering pain. And that this condition is a permanent one without hope of relief. There was proof that appellee, who was fifty-four years old, had previously been in good health, and had an earning capacity of $1,500 per year; but that he had wholly lost his earning capacity, and, upon the contrary, had become a helpless cripple. It was the province of the jury to consider this evidence and pass upon its truthfulness, and they have evidently believed this evidence, and, having done so, we can not say that the verdict is excessive, and the judgment of the court below will therefore be affirmed.