In Re Altheimer's Estate.

5-45             256 S. W. 2d 719

Opinion delivered April 13, 1953.

942

*Sam M. Levine, Bridges, Bridges, Young & Jones* and *Hillsman Taylor,* for appellant.

*Henry E. Spitzberg, Amicus Curiae.*

GRIFFIN SMITH, Chief Justice. The appeal is from an order of Jefferson Probate Court rejecting the will of Belle M. Altheimer. The petition to probate was filed in December, 1951, by Elsie J. Selig and R. S. Barnett, Jr. The two are co-guardians of Ben J. Altheimer, Jr., mentally incompetent.[1] He is in an institution in California.

Mrs. Altheimer's will was executed October 21, 1914, in Chicago. Her death occurred in Wisconsin in November, 1951. Her husband, Ben J. Altheimer, Sr., was successful in Arkansas business enterprises. He died in 1946.

Formality essential to execution of the will must be tested by the laws of Illinois. They do not materially differ from ours. Proof of execution, however, is referable

---

[1] The appeal of Elsie J. Selig has been dismissed at her petition.

to our statutes because proponents seek to have it initially probated in this state.

After providing for the payment of debts and making a small bequest to an old friend, Mrs. Altheimer directed, by Item IV, that the residue, including all rights and interests accruing under the will of her father, should go to her husband and son, but in trust for the uses and purposes later mentioned.

With these subsequent provisions we are not presently concerned. But it is not inappropriate to say that whether the will is probated or rejected the incompetent son is cared for. He is without issue. No one suggests that this status may change. The will (Item X) makes reference to the laws of Illinois, and it is contended by appellants that when Ben J. Altheimer, Jr., dies intestate —and they say intestacy is inevitable—the property will be distributed under the law of Illinois. They refer, no doubt, to Ch. 3, Art. 2, § 162, sixth subdivision, Illinois Revised Statutes, 1951, the provision being that when there is no surviving spouse, descendant, parent, brother, sister, or descendant of a brother or sister of the decedent, the entire estate shall go in equal parts to the nearest kindred of the decedent in equal degree (computing by the rules of the civil law) and without representation.

In the appeal the lower court was not called upon to construe the will; nor are we. The single issue is whether the proof offered was sufficient to justify an order admitting it to probate.

Pertinent parts of the Probate Code of 1949 are §§ 56 and 57, Ark. Stat's, §§ 62-2117 and 62-2118, vol. 5, pocket supp. The procedure outlined by § 62-2117 (2) contemplates that one or both of the attesting witnesses (who if living and available would be called) may be dead or beyond continental limits of the United States, or incapacitated. In either of the indicated circumstances the will may be established by testimony of at least two credible disinterested witnesses by proving the handwriting of the testator, "and such other facts and circumstances, including the handwriting of the attesting witnesses whose

testimony is not available, as would be sufficient to prove a controverted issue in equity, together with the testimony of any attesting witness whose testimony is procurable with the exercise of due diligence.''

· Section 62-2118 refers to the preceding procedure in respect of the testimony of subscribing witnesses and undertakes amplification by providing that the testimony of subscribing witnesses ''shall not exclude the production of other evidence at the hearing on the petition for probate; and the due execution of the will may be proved by such other evidence.''

Comments by the committee charged with the duty of drafting the Probate Code are printed as footnotes by the compilers of Arkansas Statutes. Following § 62-2118, which contains Bobbs-Merrill's bracketed citation to § 62-2117, there are references to Wigmore on Evidence, v. 5, 3d ed., and to *Rogers* v. *Diamond,* 13 Ark. 474. They are the drafting committee's authority for the comment that ''Common law rules as to the proof of the execution of wills are assumed to be in force without the necessity of any statute. Thus, if attesting witnesses are not available, it is possible to prove the genuineness of their signatures and to raise a presumption that the will was duly executed.''

A primary hearing resulting in an indication by the court that evidence in support of the petition to probate was insufficient, was followed by a second sitting. The cumulative testimony was this:

There were two attesting witnesses, Nathan Kahn and Maurice Markowitz. Each resided in Chicago when the will was executed. Kahn testified by deposition and affirmed all substantial facts. The testatrix, he said, appeared to be of sound mind, and the will was executed without apparent influence, fraud, or compulsion. Mrs. Altheimer subscribed in his presence and in the presence of Markowitz. The witnesses affixed their names in the presence of the testatrix and in the presence of each other. The instrument was the identical paper the two had seen Belle M. Altheimer sign. Kahn is not related to

any of the beneficiaries under the will, nor is he otherwise concerned with the subject matter.

Maurice A. Riskind and Julian Harris of Chicago testified by deposition that they and Maurice Markowitz had been law partners. Markowitz is dead. Each of the first six pages of the seven-page document was indorsed "Belle M. Altheimer," and the initials "M. M." and "N. K." on each page were identified by Riskind and Harris. The indorsement "M. M." was by Markowitz.

Executors of the estate of Ben J. Altheimer, Sr., found letters in Altheimer's desk. Seemingly they were written in 1914 by Mrs. Altheimer to her husband. Because of a lapse of 37 years and the admitted fact that soon after 1914 Mrs. Altheimer became mentally incompetent, it was not possible (according to proponents of the will) to find recent samples of her chirography; but two bank officials with experience in observing and comparing signatures testified to their belief that the person who wrote the letters executed the will.

Seven deeds in which husband and wife joined between 1904 and 1916 were offered for comparison purposes. Six had been of record for more than thirty years. A power of attorney executed by Belle M. Altheimer July 11, 1914, in favor of her husband—and utilized by him for a number of years—was introduced. Mrs. Altheimer's signature there was similar to the one on the will.

It was shown that Mrs. Altheimer was in a Michigan sanatorium at Battle Creek in 1914, but there is no testimony that the institution was an asylum for persons mentally afflicted. Mrs. Selig, however, testified that her understanding was that Mrs. Altheimer had been confined thirty-seven or thirty-eight years. She said that after 1914 Mrs. Altheimer was brought back to Chicago, but "I would say she was first confined in 1914 in Battle Creek. At that time she could write, but after she was confined in Wisconsin . . . I don't think there would be any specimens of her handwriting."

If it be true, as Mrs. Selig thought, that Mrs. Altheimer's confinement extended over a period of 37 or 38

years, the testatrix was necessarily under restraint when the will was executed, and if the maximum estimate be correct the confinement existed at the time witnesses verified her signature to the will. One of these witnesses was definite in his recollection of essential facts, and handwriting experts gave credit to the signature of the dead witness. The trial court was faced upon the one hand with the recollection of a witness who obviously endeavored to give the facts as she remembered them, and upon the other hand by the will itself, the personal testimony of one of the witnesses, the verification of handwriting by competent witnesses, and by presumptions attending execution of deeds subsequent to the period mentioned by Mrs. Selig.

It is our view that the two sections of the probate code thought by the trial judge to be in conflict were intended to be read together. Section 62-2117(2) expressly authorizes the testator's handwriting to be proved if neither of the attesting witnesses is available within the meaning of the section. Authenticity may be supplied by two credible witnesses who are disinterested, and by whom verity of the testator's handwriting may be established. Here we have the deposition of one of the attesting witnesses, proof of the handwriting of the second witness, documents bearing the established handwriting of the testatrix, some of which fall within the ancient document rule, and an absence of factual data other than the recollection of Mrs. Selig whose testimony even if it stood alone would be inconclusive.

There can be little doubt that the intention of § 62-2118 is to broaden the base of investigation in those circumstances where the attesting witnesses cannot be produced. The two sections should be read together in such a way as to permit the establishment of a will by any legally admissible evidence in those cases where the attesting witnesses are dead or where they are not available.

There is another consideration that should not be overlooked. It is not inconceivable that one or both of the witnesses to a will might—for a consideration, or

through prejudice or preference—recant. Are we to say that in an eventuality of that kind the testator's wishes are to be thwarted through straight-laced construction of statutory language designed for an entirely different end? The answer is easily pronounced.

There were interventions and other procedural actions that do not, at this stage of the controversy, need discussion.

The evidence was sufficient to require that the will be probated, hence the judgment is reversed and the cause remanded with directions to enter an appropriate order.

Mr. Justice MILLWEE not participating.