Sidney WARNER *v.* Kenneth G. WARNER

CA 84-418                                         687 S.W.2d 856

Court of Appeals of Arkansas
Division II
Opinion delivered April 10, 1985

*Michael Everett,* for appellant.

*·Daggett, Van Dover, Donovon & Cahoon,* for appellee.

GEORGE K. CRACRAFT, Chief Judge. Sidney Warner brings this appeal from an order of the probate court denying probate of a will on finding that it had been obtained by undue influence. He contends that the evidence was not sufficient to sustain such a finding and that the court erred in refusing to allow a full trial on the issues. We find no merit to either contention.

In 1981, while a patient in a Memphis hospital, Jessica Handschke executed three wills in which she disinherited her son Kenneth Warner and named her other son Sidney Warner as principal beneficiary. The testatrix died on May 28, 1982 and shortly thereafter Sidney Warner offered for probate the latest of the three wills which was dated October 23, 1981. The appellee contested the probate of this will on

the ground that it had been obtained by undue influence.

At the commencement of the hearing on the petition for probate counsel stipulated that a Memphis attorney who prepared all three wills would testify that in September he was contacted by appellant who came to his office for the purpose of having a will prepared for his mother. He prepared all three wills from information given him solely by the appellant. The second will was prepared and executed after Sidney Warner learned from an Arkansas attorney that under our law of pretermitted children it was necessary that the excluded son be mentioned in the will. The second will was drafted October 6 and included an additional paragraph which acknowledged the existence of Kenneth. The third will was prepared after learning from the Arkansas attorney that the earlier wills did not meet the statutory requirements for execution of a will signed by mark. It was also stipulated that the attorney had prepared other documents for the appellant and would testify that he had never seen or conferred with the testatrix.

Counsel also stipulated that when the proof shows that a proponent of a will was a substantial beneficiary the burden of proof shifts to the proponent to prove both that the will was executed without undue influence and that the testatrix had the mental capacity to execute the will. In its decree denying probate the court found that appellant had caused the will to be prepared by an attorney of his choosing, was solely responsible for both the preparation and execution thereof, and had failed to satisfy his burden of proving that the will was executed while the testatrix was competent and not under undue influence. Despite the earlier stipulation as to the presumption and burden of proof the appellant filed a motion for a new trial contending that as the will was executed in Tennessee it should have been tested by the law of that state. The motion for a new trial was denied but the appeal was never perfected.

After the period for perfecting an appeal had expired the appellant brought a second proceeding for probate of the will executed on October 6, 1981. Appellee filed a motion to deny probate on several grounds including that of undue

influence. Prior to the hearing on that petition it was stipulated that the entire record of the earlier hearing and all rulings, pleadings and motions filed subsequent to the earlier decree be made a part of the record. It was stipulated that the appellant might interpose any objection to any testimony introduced at the first hearing and that no other evidence would be adduced. It was further stipulated that the Tennessee attorney would testify that he did not advise the appellant of the law of either state concerning the presumption of invalidity of a will procured by the beneficiary.

After considering the record as made, the judge denied probate of the second proffered will. First, the appellant contends that the trial court erred in restricting the evidence to the record made at the hearing on presentation of the first will. He offers no citation of authority and makes no argument in support of his contentions. He simply states that "it is tremendously difficult to develop a record for appeal under the method imposed upon appellant by the court's order of August 22, 1984." We do not address this issue for two reasons. Assignments of error presented by counsel in their brief, unsupported by convincing argument or authority, will not be considered on appeal unless it is apparent without further research that they are well taken. *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977). Secondly, although the court's order of August 22, 1984, provided that no additional testimony would be taken it is apparent that this order was based upon the stipulation of the parties entered on May 3.

The appellant next contends the evidence does not support a finding of undue influence. His argument is two-pronged. He first contends that as the will was executed in the State of Tennessee, its validity should be tested by the law of that state. He argues that although Tennessee recognizes a similar presumption it does not place as heavy a burden as we do upon the proponent. The appellant argues that Ark. Stat. Ann. § 60-405 (Repl. 1971) settles the question of choice of law as to the execution of a will. That section provides that a will executed outside the state in a manner prescribed by our Code or in a manner prescribed by the law at the place of its execution or by the law of the testator's domicile at the

time of its execution shall have the same force and effect in this state as if executed in this state and in compliance with our law.

Ark. Stat. Ann. § 60-403 (Repl. 1971) sets out those formalities which must accompany the execution of a will in this state. It provides that the will be signed by the testator and two witnesses to whom the testator declared the instrument to be his will, that he executed it at the end of the ·instrument by one of the prescribed methods in the presence of his witnesses, and that the witnesses signed at the request and in the presence of the testator. Section 60-405 provides only that if a will is executed in a sister state with execution requirements different from our own we will recognize its execution once the requirements of the sister state have been met. Under this section the formality essential to the execution will be tested either by the law of the place of its execution or of the place of the testator's domicile. Proof of valid execution, however, is referrable to our own statutes because the proponent seeks to have the will initially probated in this state. *In Re Altheimer's Estate*, 221 Ark. 941, 256 S.W.2d 719 (1953). In discussing statutes similar to § 60-405 Dr. Robert Leflar in his work *American Conflicts Law* (1968), § 196 states:

> At least thirty-two of the American states now have statutes of this general sort. As an original question it might seem that such a statute ought to cover all aspects of the validity of wills, substantive as well as formal, but the opposite conclusion has been reached because the wording of the statute is restricted to manner of execution. Thus substantive grounds for the asserted invalidity of wills are left to be handled under the common law of conflicts. This would include such matters as partial invalidity of a will because of failure to mention a child or entire invalidity due to the mental incapacity of a testator or to undue influence allegedly exerted upon him.

The appellant recognizes the argument that we are concerned with a presumption of fact which might be considered procedural and thus governed by the law of the

forum. He argues, however, that this statement is not all inclusive and that there are some presumptions which are so inseparably bound to the substantive law that the *lex loci* should control. We conclude that our court has adopted a different view. Our courts have declared that on questions of the burden of proof the law of the forum governs. *St. Louis and S.F. Rd. Co.* v. *Coy,* 113 Ark. 265, 168 S.W. 1106 (1914); *Huckaby* v. *St. Louis, I.M. & S. Ry. Co.,* 119 Ark. 179, 177 S.W. 923 (1915); *St. L., I.M. & S. Ry. Co.* v. *Steel,* 129 Ark. 520, 197 S.W. 288 (1917). These cases dealt with a presumption of negligence arising against a railroad company by proof of injury to a passenger caused by the operation of its trains. In *Huckaby,* the court said:

> The presumption of negligence arises in a suit brought in this jurisdiction upon proof of the fact of injury to a passenger by the operation of a railroad train in another State where no such rule obtains, such presumption relating to the burden of proof and being governed by the law of the forum.

Dr. Leflar, *American Conflicts Law* § 124, discusses the question of presumptions and burden of proof as follows:

> Any so called 'conclusive presumption' is so obviously a rule of substantive law that it should not be called procedural. But the ordinary rebuttable presumption is for all practical purposes a substitute for evidence, or merely another kind of evidence which is offered to the court. . . . The decided weight of authority treats the applicability of presumptions, like the admissibility of evidence, as a procedural matter, with forum law governing, regardless of substantive effect.

Our cases declare that the presumption of undue influence which arises under the circumstances of this case is rebuttable. It arises because when a will is written by one who stands to benefit from it the circumstances require stricter scrutiny and make it incumbent on the one seeking to establish the will to show beyond reasonable doubt that the testator had both the mental capacity and freedom of will required to render a will legally valid. *McDaniel* v. *Crosby,*

19 Ark. 533 (1858). Whether those actions occur in this state or elsewhere they give rise to the same need for stricter scrutiny and impose upon the proponent the same burden.

In addition to the presumption arising from appellant's action there was direct evidence of his exercise of undue influence over his mother at the time the will was procured.

Prior to her hospitalization in Memphis there had been a close relationship between the mother and both of her sons. She had executed a will leaving her estate to them in equal shares. At the time the testatrix suffered her stroke and disability she executed a power of attorney giving her son Kenneth plenary power over all of her property. He properly exercised that authority until the power was revoked in writing on September 30 — the same day that appellant procured the first of the three wills and the execution of a power of attorney in his favor.

Initially the appellee had maintained his mother's existing accounts in her banks in West Memphis. It was stipulated that it was the policy of those banks not to honor a power of attorney exercised by a non-resident of Crittenden County and that the bank officers had so informed the appellee. As a result of this, and at their suggestion, he closed out those accounts and deposited his mother's funds in her own name in a bank in Marianna where he resided. At the hearing the appellant admitted that prior to the execution of the instrument, although he knew that appellee had the power of attorney and the ability to take care of any of her wants and had been doing so, he informed his mother that she didn't have money to buy "Cokes and things like that" because the appellee had taken all of her money.

There was evidence from another witness that she had visited the testatrix in the Memphis hospital and had observed Sidney talking to his mother about money and "what Kenneth had done." There was other evidence from which the court could and did conclude that these actions by the appellant so dominated and influenced the action taken by his mother as to invalidate the will.

The appellant next contends that a great deal of the oral testimony at the first hearing consisted of irrelevant evidence of appellant's alleged mismanagement of the testatrix's affairs. The appellant argues in his brief that although no objection was made to this testimony at the first hearing he did note his objections in writing to that evidence to the trial court before the second hearing. Neither the objection nor the court's ruling is abstracted. Although not required to, we have looked at the record and we find that he made his objections to testimony by reference to page and line number. For us to determine what testimony was objected to would require that we peruse the record to locate the lines and pages he refers to. This we are unwilling to do.

At the conclusion of the first hearing the trial court in announcing his findings stated:

The court has heard a great deal of evidence, it has taken three days to try this lawsuit. *Some of the evidence is probably of little value to the court.* But the court has heard the witnesses, observed their demeanor from the witness stand, and feels that there is no question that the will of Jessica P. Handschke as executed on October 23, 1981, is the result of undue influence on the part of Sidney Warner. [Emphasis supplied]

Without an abstract we cannot tell what testimony was objected to or the court's rulings on objections.

Appellant admitted that after the power of attorney was executed he had withdrawn thousands of dollars from his mother's account and placed them in his own lock box, purchased real estate in his own name and that of his daughter and deposited sums in his daughter's account. We recognize that evidence of conduct which takes place after the will is executed does not affect the validity of the will but it is admissible for its bearing on the proponent's actions as a whole. *Gingrich* v. *Bradley*, 232 Ark. 884, 341 S.W.2d 33 (1960).

We affirm.

CORBIN and MAYFIELD, JJ., agree.