St. Louis, Iron Mountain & Southern Railway Company v. Steel.

Opinion delivered July 9, 1917.

1. NEGLIGENCE—CONCURRING CAUSES.—Where two concurring causes produce an injury which would not have resulted in the absence of either, the party responsible for either cause is liable for the consequent injury. A railway will be liable for the death of its servant whom it negligently injured, where both the injury and typhoid fever contributed to cause his death.

2. MASTER AND SERVANT—RULES FOR PROTECTION OF SERVANT.—A master is required to make the place where his servant works safe, and the servant is required to obey the master's reasonable rules promulgated for his protection.

3. MASTER AND SERVANT—DISREGARD OF RULE—INJURY.—The violation by the servant of an unambiguous rule of the company made for his protection, and of which he had knowledge, acting independently and not under the direction of his foreman or superior in work, is negligence *per se*, and may be so declared as a matter of law.

4. MASTER AND SERVANT—INJURY TO SERVANT—VIOLATION OF RULE—AUTHORITY OF MASTER.—Where a servant knows of a rule, promulgated by the master for his protection, imposing a duty upon him, the performance of that duty can not be abrogated or suspended by any one but the master himself or his vice principal, who stands in his stead for the express purpose of doing that thing.

5. MASTER AND SERVANT—INJURY TO SERVANT—FAILURE TO OBSERVE RULE.—A railway company required employees, when going under cars to work, to set out a blue flag. *Held*, a repair foreman was without authority to abrogate the rule, it being his duty to see that the rule was obeyed.

6. MASTER AND SERVANT—INJURY TO SERVANT—VIOLATION OF RULE—CONTRIBUTORY NEGLIGENCE.—By a rule a railway company required its servants to set out a blue flag before going under cars to work. Plaintiff did not set out the flag, being told by his foreman that he "would watch out for him." *Held*, it was a question for the jury to determine whether plaintiff was guilty of contributory negligence, under the facts.

7. NEGLIGENCE—FEDERAL EMPLOYERS' LIABILITY ACT.—Since the passage of the Federal Employers' Liability Act (approved April 22, 1908), all State laws on that subject have been superseded.

8. NEGLIGENCE—FEDERAL EMPLOYERS' LIABILITY ACT—PRESUMPTIONS UNDER STATE LAWS—RUNNING OF TRAINS.—The Federal Employers' Liability Act contains no provision to the effect that a presumption of negligence arises from an injury caused by the running of trains, and the question as to what negligence is the basis of liability must be determined without reference to the State statutes. The decisions of the Supreme Court of the United States control in determining the issue of negligence, in cases governed by the Federal Employers' Liability Act.

9. NEGLIGENCE—FEDERAL EMPLOYERS' LIABILITY ACT—PRESUMPTIONS.—Under the Federal Employers' Liability Act, a *prima facie* case of negligence against a railway company is not established merely by proof of an injury caused by the operation of a train, and such proof does not throw upon the railway company the burden of showing that it was not negligent; but on the contrary the plaintiff must show the actual existence of negligence on the part of the agents or employees of the railway company.

10. Negligence—lookout statute—federal act.—The Arkansas
    Lookout Statute has no application in cases coming under the Federal
    Employers' Liability Act.
11. Master and servant—injury to servant—res ipsa loquitur.—
    Plaintiff, an employee, went under a car of defendant railway com-
    pany to do repair work, neglected to put out the blue flag required by
    the company, and was injured when the car he was working under
    was moved by a locomotive. *Held,* the doctrine of *res ipsa loquitur*
    did not apply.

Appeal from Saline Circuit Court; *W. H. Evans,*
Judge; reversed.

*E. B. Kinsworthy, W. R. Donham* and *W. G. Riddick,*
for appellant.

1. A verdict should have been directed for defend-·
ant. The evidence here is practically the same as upon
the former appeal, except that of Miss Chaplain, a new
witness. 119 Ark. 349. The injury was due to a risk
Steel assumed and the testimony is not sufficient to show
any injury. The blue flag rule was in force and it was
his duty to post it; he violated the rule. 3 Labatt on
Master & Servant (2 ed.), par. 1281; 83 Ark. 334; 56 Ill.
App. 462; 11 Ohio C. C. 553; 12 C. C. A. 595; 24 U. S.
App. 16; 63 Fed. 228; 22 S. E. 833; 27 N. E. 110; 145 N. Y.
190; 157 Fed. 347; 110 Mo. 394. Failure to obey rules is
negligence. 100 Ark. 380; 120 *Id.* 61; 115 *Id.* 437. A
yardmaster has no authority to unmake rules of the com-
pany. 124 Ark. 437. No negligence was attributable to
defendant. The cause of the injury, if any, was Steel's
own negligence in going under the car without posting a
blue flag. 60 U. S. (L. Ed.) 732; 233 U. S. 492.

This case is governed by the Federal Employers'
Liability Act and no presumption of negligence on the
part of defendant arises on the mere proof of injury by
operation of the train. The State law is superseded.
Roberts, Injury to Interstate Employees, p. 38; 79 S. E.
932; 153 Ky. 34; 240 U. S. (60 L. Ed.) 1030.

2. Conceding that Steel did not, as matter of law,
assume the risk of violating the blue flag rule, neverthe-
less the instructions given for plaintiff on this point were

erroneous. The question of defendant's liability was not submitted to the jury under proper instructions. The proof is that Steel died of typhoid fever.

3. The court erred in its instructions as to the burden of proof. This burden was on plaintiff under the Federal act. See cases *supra.*

4. The court erred in refusing and in amending defendant's instruction asked. Cases *supra.*

5. There was error in the form of the verdict prepared by the court. It was not in the alternative and was virtually a direction to find for plaintiff.

*Bratton & Bratton, J. S. Utley* and *D. M. Cloud,* for appellee.

1. There was ample testimony as to the injury, death from the injury, negligence of defendant and the damages. The case was properly submitted to a jury. McDonald was a foreman for the master and was not working on the cars. Review the cases cited for appellant and contend that they do not apply.

2. There is no error in the instructions given. As modified they state the law correctly. An employee is warranted in relying upon the assurance of a foreman and vice principal, and was justified in going under the car and there was no negligence or assumed risk in so doing.

3. There was no error in giving instruction "D" and refusing No. 17, which was in direct conflict with "D." It correctly states the law. 95 Ark. 297; 114 *Id.* 224; 94 *Id.* 15; 104 *Id.* 59; 68 *Fed.* 148; 23 Atl. 733; 47 L. R. A. 647; 96 Md. 683.

4. Where two independent causes concur in producing an injury, the party at fault for one of the causes will be liable if the injury would not have occurred in the absence of such fault. 106 N. E. 742; 170 S. W. 459; 133 Pac. 1103; 68 So. 234; 66 *Id.* 517; 135 Pac. 845.

Where several proximate causes contribute to an injury, each is the efficient cause if the accident would not

have happened without it. 144 N. Y. S. 322; 159 S. W. 126; 127 Pac. 488.

5. Instruction "C" was properly given. 117 Ark. 505. The Federal Employers' Liability Act does not strip the State courts of all their powers, or change the rule as to the weight of the evidence. The Federal rules do not control in matters pertaining to the procedure in the enforcement of a remedy. 60 U. S. (Law Ed.) 961. The instruction is proper under the Federal Act. 199 Fed. 379. The presumption is that deceased was exercising due care for his protection. 121 Minn. 388; 199 Fed. 702; 177 Mo. App. 286; 179 Mich. 388.

Appellant was liable for the acts of those in charge of the train, and those of its vice principal. 159 Fed. 347; 161 *Id.* 66. The doctrine of *res ipsa loquitur* is applicable under the Federal act. 117 Ark. 505; 188 Fed. 649. The question depends upon the facts of the particular case. 110 Fed. 669; 101 *Id.* 59; 11 *Id.* 439; 67 *Id.* 573; 166 *Id.* 283; 91 *Id.* 206; 10 *Id.* 140; 211 *Id.* 111; 155 *Id.* 655; 77 Ark. 1; 75 *Id.* 479; 57 U. S. (L. Ed.) 818; 117 Ga. 106, etc.

6. The risk was not an assumed one. 178 Mo. 528, and cases *supra.*

7. Alternative verdicts were submitted to the jury.

### STATEMENT BY THE COURT.

This is the second appeal in this case. The facts developed on the first trial are very elaborately stated in the case as reported in 119 Ark. 349. For the purpose of this opinion they may be briefly restated as follows:

R. D. Steel was in the employ of the appellant as a car repairer. He was directed by McDonald, the foreman of the repair gang, to go under a car and repair it. Steel said something about whether or not they should have the flag put out and the foreman told him to go ahead under there, that they were in a hurry, and he (McDonald) would watch out for, and protect him. But the foreman did not observe the rule which required workmen while working under cars to put out a blue flag as a signal of danger. The rule is as follows: "Examine per-

sonally scaffolding, tackle and all other appliances before trusting them. If your duties require you to go around, under or on cars, protect yourself with blue signals.'' It was shown that Steel was furnished with a work card upon which this rule was printed.

While Steel was at work under the car an engine, with cars attached, backed up and shoved the cars under which he was working some two or three car lengths, moving them very slowly. About the time the cars stopped Steel came out from under the same, and the witness who saw him do so stated that he could not tell whether he was injured or scared, or both. Steel, at the time of and prior to this occurrence, was shown to have been a well man and one exceedingly quick in action and unusually stout. After this occurrence he was unable to continue work, and the foreman offered to carry him home on the speeder. When he got home he was unable to walk and crawled up the steps. He went to bed immediately and called the company's doctor. The occurrence took place in October, 1912. There was a bruised place on his back and on the left side of his head, about his ear, from which he continued to suffer until the time of his death. He was not able to do anything after the occurrence. Before his alleged injury he was accustomed to horseback riding, but after that he never rode again. Although he was able to go about, he was never thereafter able to do any work. He finally took to his bed in June, 1913, and died on the 12th of August.

There was testimony on behalf of the appellant tending to show that the immediate cause of Steel's death was typhoid fever. But there was testimony on behalf of the appellee tending to prove that his death did not result from typhoid fever alone, and would not have resulted from that cause alone, but that his death was the result of the injuries he received at the hands of the employees of appellant while he was working under the car.

This suit was instituted by the appellee as the administrator of the estate of Steel to recover damages on account of the death of Steel, which the complaint alleged

was caused through the negligence of appellant's foreman in failing to protect Steel and in permitting the engine and cars to be run upon the track and upon the car under which Steel was working. The answer denied the material allegations of the complaint, and averred that at the time of the alleged injury the appellant was engaged in interstate commerce, and that the car which was being repaired was a car that was being used in interstate commerce, the same being used in transporting dirt from a point near Bryant, in Saline County, to different points along the track of appellant, the same being a line of railroad extending from St. Louis, Missouri, to Texarkana, Arkansas, and alleging that by reason of the above facts Steel, at the time of his injury, was employed in interstate commerce, and that therefore the cause of action was controlled by the Federal Employers' Liability Act, approved April 22, 1908.

The jury returned a verdict assessing the damages accruing prior to the death of Steel at $1,000, and the damages on account of the death at $2,000. Judgment was entered in favor of the appellee, and this appeal is duly prosecuted. Other facts stated in the opinion.

WOOD, J., (after stating the facts). I. The appellant contends that the court should have directed a verdict in its favor on the issues of fact involved in the case, towit, as to whether or not Steel was injured as alleged in the complaint, and, if so, whether or not these injuries resulted in his death, and on the issues of negligence and contributory negligence and assumed risk. There was substantial evidence to sustain the verdict, which is conclusive so far as this court is concerned, and a discussion of the facts could serve no useful purpose as a precedent.

II. The next question for our consideration is whether or not the court correctly submitted the issues of fact in its instructions.

On the issue of fact as to whether the death of Steel resulted proximately from the alleged injury or whether the proximate cause of his death was typhoid fever, the testimony was not the same on the last trial as on the

first. On the last trial there was testimony from which the jury might have found that the proximate cause of the death of Steel was the injury that he received, and that but for this injury his death would not have resulted from the typhoid fever alone, although such fever contributed to and concurred in producing his death.

(1) The court instructed the jury as follows: ''Even if you should believe from the evidence that typhoid fever contributed to cause the death of deceased, yet if you further believe from the evidence that deceased received an injury as alleged and that said injury was caused by the negligence of the defendant's agents and servants as alleged, and that said injury, together with typhoid fever, caused the death of deceased, and that but for said injury deceased would not have died, then your verdict should be for the plaintiff.''

This instruction was correct and was warranted by the new evidence adduced at the last trial tending to prove, as we have seen, that Steel's death would not have been caused by the typhoid fever alone, but that his death was caused by the injury, to which the typhoid fever also contributed and concurred in producing.

This court, in *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91, 98, quoted from *Freeman* v. *Mercantile Accident Association,* 156 Mass. 351, defining proximate cause where another cause also contributed to the result, as follows: ''The law will not go farther back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions. The law does not consider the cause or causes beyond seeking the efficient predominant cause, which, following it no further than those consequences that might have been anticipated as not unlikely to result from it, had produced the effect.''

This new testimony brings the case within the doctrine announced by this court in *St. L. S. W. Ry. Co.* v. *Mackey,* 95 Ark. 301, as follows: ''Where two concurring causes produce an injury which would not have re-

sulted in the absence of either, the party responsible for either cause is liable for the consequent injury, and this rule applies where one of the causes is the act of God. * * * The act of God which excuses must be not only the proximate cause but the sole cause. And where the act of God is the cause of the injury, but the act of the party so mingles with it as to be also an efficient and co-operating cause, the party will be still responsible." See also numerous other authorities there cited.

In *Belt R. & Stock Yards Co.* v. *McClain,* 106 N. E. 742, it is held: "Where two independent causes concur in producing an injury the party at fault for one of the causes will be held liable if the injury would not have occurred without it." It is unnecessary that the negligent act be the last or nearest cause, though it must be an essential cause. *Waschow* v. *Kelly Coal Co.,* 245 Ill. 516, 92 N. E. 303.

And in *Brown* v. *West Riverside Coal Co.,* 120 N. W. 732, it is held: "Where the negligence of a responsible person concurs with an act of God in producing an injury such person is liable for the consequences, provided the injury would not have happened but for his failure to exercise ordinary care."

The court also instructed the jury that if they found from a preponderance of the evidence that Steel died of typhoid fever there could be no recovery for his death unless they further found that he would not have died but for the fact of having previously received the injury as the result of the negligence of the defendant. This instruction was correct, under the new evidence, and having given these, the court did not err in refusing prayer for instruction No. 17*, asked by appellant.

---

*17. You are instructed that even though you should find that Rhad Steel received an injury, and even though you should find that said injury was the result of negligence on the part of the defendant or some of its employees, and even though you should further find that because of said injury, that deceased was so weakened and lowered in vitality that he was more susceptible to disease and less able to

III. Among others, the court granted appellee's prayer for instruction as follows: "If you find from the testimony that the deceased's foreman was personally in charge of the work, and that he directed deceased to go under the car, and assured him that he, the foreman, would protect him, you will be warranted in finding that deceased was not negligent in going under the car without posting a signal flag, provided you find that deceased went under said car relying on the promise of McDonald to protect him."

Other prayers for instructions were granted at the instance of the appellee to the same purport, telling the jury in effect that, notwithstanding the blue flag rule of which Steel had knowledge, he had a right to obey the direction of his foreman and to go under the car and do the work, relying upon the promise of the foreman to protect him, and that if he went under the car in obedience to the foreman's direction and relying upon his promise, and was injured as a result, that their verdict should be in favor of the appellee. These instructions were all erroneous, because they, in effect, announced the doctrine that, notwithstanding the rule promulgated by the company for the protection of the car repairers required that they should protect themselves while under or on cars repairing the same, by putting out a blue flag, their foreman in charge would have the right to abrogate or suspend such rule, or to ignore same, and if he did so and the workmen under him were injured while obeying his instructions, upon the promise that he would protect them from danger, the company would be liable on ac-

<hr>

resist it than he otherwise would have been, still you are instructed that, notwithstanding these facts, if you believe from the evidence that the deceased died of typhoid fever, then there can be no recovery for his death, and this is true even though you may believe from the evidence that his death would not have resulted but for his lowered vitality and weakened condition. (Reporter.)

count of the negligence of its foreman, and the employee would not, under such circumstances, as matter of law, be guilty of contributory negligence.

The uncontroverted evidence shows that the deceased had knowledge of the above rule of the company.

(2)   A contract between the master and servant involves certain reciprocal duties which, if not expressed, are clearly implied, and grow out of the relation between them.  Among others on the part of the master is the duty to exercise ordinary care to furnish his servant with a safe place to work, and to this end the master may adopt reasonable rules and regulations for the protection of the employees while in the performance of their duties.  And it is the duty of the servant to exercise ordinary care for his own protection, and in so doing to obey the rules which the master has adopted and promulgated to insure the safety of the employee.

Mr. Labatt, in his great work on Master and Servant, speaking along this line, says:  "The duty of the servant to comply with the rules which the master has published for his guidance may be referred to the broad principle that the rules, if reasonable, may be assumed to indicate the methods of work which experience has shown to be calculated to furnish the best chance of safety, under the circumstances, both to the servant himself and to his fellow-employees; and that a breach of those rules must, by consequence, charge him with that culpability which the law infers from the doing of a certain act in an unnecessarily dangerous manner.  But the duty may be, and more commonly is, referred to the conception that an agreement on his part to obey the rules may be implied from his having entered or remained in the employment with a knowledge of their provisions."   3 Labatt on Master & Servant, page 3581, section 1281.

Again he says:  "The servant's agreement is that, whatever may have been, apart from the rule, the standard of proper care under the circumstances, the rule itself is to define that standard, as between the servant and his

master, as long as the former remains at work." *Id.* p. 3608, sec. 1284.

Speaking of the result of a violation of the rule, the same learned author declares: "The accepted doctrine is that, if the evidence clearly shows that the injury complained of was caused by the servant's violation of a rule promulgated for the protection of the class of employees to which he belonged, under such circumstances as those attending the accident, a court is justified in declaring him to have been, as a matter of law, guilty of contributory negligence, provided that the rule in question was valid and reasonable; that its observance under the given circumstances was possible without infringing another rule or duty of paramount obligation; that its contents were known to him, either actually or constructively; that it had been neither abrogated, nor suspended, nor waived at the time when the injury was received, and that he was chargeable with notice of the fact that the conditions which the rule was framed to meet existed at the time when the injury was received." *Id.*, p. 3581, sec. 1281.

(3) It is undoubtedly the doctrine of our own court that the violation by the servant of an unambiguous rule of the company for his protection, and of which he had knowledge, acting independently and not under the direction of his foreman or superior in work, is negligence *per se* and may be so declared as a matter of law. *Snellen* v. *K. C. So. Ry. Co.,* 82 Ark. 334; *Young* v. *St. L., I. M. & S. R. Co.,* 100 Ark. 380.

In *St. L., I. M. & S. R. Co.* v. *Stewart,* 124 Ark. 437, 448, it is said: "The effect of a violation by an employee of the rules prescribed for his own protection is too well settled by decisions of this and other courts to call for citation of authorities. If the rule was violated by plaintiff, it constituted negligence *per se* which will prevent his recovery of damages except such as are allowed by the Federal statutes for the comparative proportion attributable to the negligence of the company."

(4-5) Now this rule was made for the protection of car repairers while on or under cars, and the rule in ex-

press.terms says to each workman "protect yourself with blue signals." So the servant is informed by the rule itself that the duty of putting out the blue flag is not one that the master has delegated to or imposed alone upon the foreman who is present and directing the work to be done. The rule is intended for the guidance of each and all the employees, and only the master himself or his vice principal, who stands in his stead for the express purpose of making, abrogating, suspending or waiving the rules, has the power to either make them or set them aside. The foreman of a gang of car repairers has no such power. If the conditions for which the rule was framed existed at the time the work was being done, it was his duty, as well as that of the workmen actually engaged in the work of repair, to see that the rule was observed. He had no power to abrogate the rule, nor to suspend its enforcement or waive obedience to it.

It was said in the case of *St. L., I. M. & S. R. Co.* v. *Stewart, supra:* "The yardmaster had no authority to make or unmake those rules which had been promulgated by the company for the guidance of all its servants, but it was his duty to enforce them, or to report infractions thereof."

It was the duty of the foreman of the repair gang, not to suspend or waive the observance of this rule, but to see that it was obeyed. "It would lead," says the Supreme Court of New York, "to the establishment of an exceedingly unsafe rule to hold that a gang boss over forty or fifty men could, without direct authority from the company, change the safe and proper rules in pursuance of which the work in the repair yards was conducted, and direct workmen to prosecute their labors under cars standing on tracks other than the regular duly protected repair tracks." *Keenan et al.* v. *N. Y. L. E. & W. R. R. Co.,* 145 N. Y. 190, 195.

On the former appeal it was said: "There does not appear to have been such testimony of a continued violation of the rule known to and acquiesced in by the

master, as would abrogate it." There was no additional testimony to the effect that the foreman of the repair gang or others, or the workmen themselves, had so habitually violated the rule as to have brought home to the master the knowledge of such violation or to lead the servant to believe that the master had acquiesced in such violation, and that therefore the rule had been abrogated, or that the foreman was vested with power to suspend, for the time being, the observance of the rule.

But, while the court erred in declaring as a matter of law that Steel was not guilty of contributory negligence if he went under the car without putting out the blue flag, provided he did so relying upon the promise of his foreman to protect him, it does not follow that the court should also have granted the prayers of appellant for instructions which declared that Steel, under the circumstances mentioned, was guilty of contributory negligence as a matter of law, and that he could not recover.

In *St. Louis, I. M. & S. Ry. Co.* v. *Blaylock,* 117 Ark. 506, 516, we said: "When the men were working in gangs out in the yard the rule was obeyed when the foreman put out the blue flag."

Where the conditions exist calling for the putting out of the blue flag, the rule is obeyed, to be sure, when any of the employees of a gang or the foreman, put out such flag so as to give warning to all other operatives of the danger to the employees engaged in the repair work.

(6)   The testimony shows that when Steel was directed by the foreman to go under the car to make the repairs he said something to the foreman about whether or not they should have a flag up and the foreman told him to go ahead under there, that they were in a hurry, and he, the foreman, would protect him. This testimony made it a question for the jury to determine as to whether or not Steel was guilty of contributory negligence in going under the car, if he did so, relying upon the promise of the foreman to watch for and protect him. The only protection in compliance with the rule,

of which both Steel and the foreman had knowledge, was the placing of the blue flag. Therefore, when the foreman assured Steel that he would protect him, it was a question for the jury to say whether or not Steel, in the exercise of ordinary care, had the right to rely upon this promise as meaning that the foreman would give him that protection that the rules of the company required. According to one witness, the foreman said he "would protect him," and another that he "would watch out for him." The jury might have found that Steel could have understood from this language that the foreman meant to protect and watch out for him. Considering the place, the character of the work he had to do, and the time necessary to accomplish the same, it was for the jury to determine whether or not Steel was guilty of contributory negligence in going under the car in obedience to the direction of his foreman and in reliance upon his promise for protection. The court should not, as a matter of law, have declared that Steel was or was not, under the testimony in this record, guilty of contributory negligence.

The court granted appellee's prayer for instruction which, in effect, told the jury that if they believed from the testimony that Steel was injured while engaged in the performance of his duty under a car on one of defendant's tracks at Benton, and that while so engaged the car upon which he was working was struck by moving cars of appellant, resulting in his injury, that this was *prima facie* proof of negligence on the part of the defendant, and refused appellant's prayer for instruction telling the jury, in effect, that the burden was upon the plaintiff to establish the negligence of the train crew by a preponderance of the testimony. The court erred in this ruling.

(7) On the second trial of the case the appellant amended its answer, setting up facts sufficient to bring the case within the Federal Employers' Liability Act, passed and approved April 22, 1908. That act, therefore, governs the case. Since its passage all State laws

upon the subject have been superseded. "It covers and overlaps the whole State legislation, and is therefore exclusive." *Fulgham* v. *Midland Valley R. Co.*, 167 Fed. 660. See also 2 Employers' Liability Cases, 223 U. S. 1, 55; *Seaboard Air Line Ry.* v. *Horton*, 233 U. S. 492; *Michigan Cent. R. R. Co.* v. *Vreeland*, 227 U. S. 59; *M., K. & T. Ry. Co.* v. *Wulf*, 226 U. S. 570; Thornton's Federal Employers' Liability Act, pp. 34 *et seq.* 39 inc., and numerous cases cited in note; Roberts' Injuries Interstate Employees, pp. 34 *et seq.* 43.

(8) We do not know of any case, and are not cited to any in the excellent briefs of counsel, where the United States Supreme Court has passed upon the precise question as to whether or not the rule as to the presumption of negligence and as to the burden of proof in cases where the injury is shown to have been caused by the running of trains will be controlled by the State statute on that subject. But as the Employers' Liability Act contains no provision to the effect that a presumption of negligence arises from an injury caused by the running of trains, we think the burden should be left where it rests under the decisions of the United States Supreme Court in such cases, and that the question as to whether or not the negligence upon which liability is predicated exists must be determined without reference to the State statute upon the subject.

Appellee relies upon *Minneapolis & St. L. R. Co.* v. *Bombolis,* 60 Law Ed. (U. S.) 961. In that case the Supreme Court of the United States held that the liability of the carrier under the Federal Employers' Liability Act could be determined in the State court where the cause was tried by a jury constituted and reaching its conclusion under the procedure by the State statute, which authorized five-sixths of the jury, after the cause had been under submission twelve hours, to return a verdict that should have the effect of a unanimous verdict. The court held that the seventh amendment to the Constitution of the United States, requiring a unanimous

verdict by a jury according to the course of the common law, *i. e.*, a unanimous verdict by a jury of twelve, did not apply and supersede the statute of the State prescribing what was necessary to constitute a verdict. But the doctrine of that case does not have any application here for the reason that the issue there decided related to a mere matter of procedure as to whether a verdict could be rendered by a less number than twelve. Here the issue involves a matter of substantive right in defense to the cause of action under the Federal law, namely, that the burden rests upon the employee who alleges that he was injured through the negligence of his employer to prove it. This right can not be lessened or destroyed by a State statute, the effect of which, as construed, is to declare that the carrier is liable when it is proved that the injury was received in the running of a train, and that upon such proof the injured employee is entitled to recover unless the carrier shows that there was no negligence.

For the sake of uniformity, the decisions of the Supreme Court of the United States should and must control in determining the issue of negligence where the Employers' Liability Act governs; for, as is said by Mr. Roberts, "Certainly there must be some controlling authority in determining negligence under this act, and if these questions are left to be determined according to the admittedly conflicting decisions of the courts of the several states, whose rulings are paramount and exclusive in their own jurisdiction, the question as to when a carrier is negligent under the Federal statute would become a matter of the geography of the states and not of one supreme law applying uniformly within its exclusive domain." "Such discrimination," he continues, "would defeat one of the main objects of the national statute—one uniform rule of liability in all the states where a carrier by railroad is engaged in interstate commerce to its servants while employed in such commerce." Roberts' Injuries Interstate Employees, pp. 37, 38.

In *Seaboard Air Line Ry.* v. *Horton, supra,* the court, commenting upon the trial court's instructions, said: "In these instructions the trial judge evidently adopted the same measure of responsibility respecting the character and safe condition of the place of work and the appliances for the doing of the work that is prescribed by the local statute. But it is settled that since Congress, by the Act of 1908, took possession of the field of the employers' liability to employees in interstate transportation by rail, all State laws upon the subject are superseded."

In other words, the trial court, in the above case, framed its charge so as to determine the issue of negligence upon which the liability of the railway company depended in conformity with the laws of the State. The Supreme Court of the United States held that this charge was erroneous, and reversed the cause, holding that the charge was not in conformity with the intention of Congress in passing the Employers' Liability Act.

And in the later case of *Southern Ry. Co.* v. *Gray,* 241 U. S. 333, 338-9, the Supreme Court of the United States says: "As the action is under the Federal Employers' Liability Act, rights and obligations depend upon it, and applicable principles of common law as interpreted and applied in Federal courts. Negligence by the railway company is essential to a recovery; and there is not a scintilla of evidence to show this under the most favorable view of the testimony urged by counsel for defendant in error."

(9) From the trend of these decisions, we believe the correct doctrine under the Federal Employers' Liability Act is to hold that a *prima facie* case of negligence against a railway company is not established merely by proof of an injury in the operation of trains and that such proof does not shift the burden upon the railway company to show that it was not negligent; but, on the contrary, plaintiff must show the actual existence of negligence on the part of the agents or employees of the carrier. Under the State statute, as construed by us, negligence

is presumed upon proof of the injury which occurred in the operation or running of trains. Kirby's Digest, § § 6607 and 6773; *K. C. Sou. Ry. Co.* v. *Davis*, 83 Ark. 217; *St. L., I. M. & S. Ry. Co.* v. *Steel,* 87 Ark. 308; *St. L., I. M. & S. Ry. Co.* v. *Fambro,* 88 Ark. 12. But such is not the case, as we understand it, under the Federal Employers' Liability Act, since that act contains no provision to that effect. *South Covington, etc., Ry. Co.* v. *Finan,* 153 Ky. 340, 155 S. W. 742; *Charleston & W. C. R. Co.* v. *Brown,* 79 S. E. (Ga.) 932.

(10) It is clear that in the absence of our statutes the burden of proof in this case would be the same as in all other cases, requiring a person who alleges damages on account of negligence to prove it. As these statutes have no application under the Employers' Liability Act it follows that the instructions of the court applying the State statutes to the facts of this record were erroneous.

In the recent case of *St. Louis & S. F. Ry. Co.* v. *Coy,* 113 Ark. 265, 284, we said: "On the question of the burden of proof the *lex fori* governs," and quoted from Prof. Minor (On Conflict of Laws, p. 486) as follows: "But if the rule prescribed by the *lex delicti* with respect to the defendant's negligence is a mere rule of evidence, such as rules respecting the burden of proof touching negligence, the *lex fori* will govern, not the *lex delicti,* in accordance with the general principle that rules of evidence relate to the remedy, and like all matters of that character are regulated by the law of the situs of the remedy."

But in the above case the Employers' Liability Act was not involved, no question as to the effect of an exclusive law of a superior jurisdiction was at issue, and the rule there stated has no application here for the reason that the Employers' Liability Act, with respect to the employer's negligence, is not a mere rule of evidence relating to the remedy. It creates liability only where negligence is proved, and where negligence under that act is charged the employer has the substantive right in defense to deny liability, which places the burden upon the plaintiff to prove it.

(11)   The doctrine of *"res ipsa loquitur"* has no place in this case, and the authorities cited in the exhaustive brief for appellee on that question are not in point.   The injury and the circumstances attending it were not so unusual and of such a nature that the injury could not well have happened without the company being negligent, nor was the injury caused by something connected with the equipment or operation of the road over which the company had entire control.   See *Choctaw, Okla. & Gulf R. Co.* v. *Doughty,* 77 Ark. 1, and cases there cited.   On the contrary, the duty of observing the rule which would have prevented the injury to Steel was entirely under the control of Steel and his foreman while the repair work was being performed. We can not agree, however, with counsel for appellant that the trial court should have declared as matter of law that the failure to observe the blue flag rule which resulted in the injury was solely the negligence of Steel.   The foreman was the fellow servant of Steel in the matter of promising to protect him while he was engaged in doing repair work under the car, and the jury were warranted in finding that the failure of the foreman, after promising to protect and watch for Steel, was negligence on his part for which the carrier would be liable under the comparative negligence rule of the statute.   It was strictly within the scope of the employment of the foreman, while directing the car repairers, as well as the men under him, to see that the blue flag rule was obeyed.

For the errors indicated the judgment is reversed and the cause is remanded for a new trial.

McCULLOCH, C. J. (concurring).   I concur in the judgment of reversal for the other reasons so well stated in the opinion of the majority, but I can not bring myself in accord with the view that the statute of this State (Kirby's Digest, § 6773) placing on a railway company in a suit to recover damages on account of alleged negligence, the burden of proving due care in the operation

of its train, is not applicable in the trial of an action under the Federal Employers' Liability Statute. There is no suggestion, I believe, in any of the decisions of the Supreme Court of the United States that rules of evidence prevailing in the State where such an action is brought to trial are not applicable. Prof. Minor in his work on Conflict of Laws (page 486) says that ''if the rule prescribed by the *lex delicti* with respect to the defendant's negligence is a mere rule of evidence, such as rules respecting the burden of proof touching negligence, the *lex fori* will govern, not the *lex delicti*, in accordance with the general principle that rules of evidence relate to the remedy, and like all matters of that character are regulated by the law of the situs of the remedy (*lex fori*).'' We recognized that principle in the recent case of *St. Louis & San Francisco Rd. Co.* v. *Coy*, 113 Ark. 265.

The Federal statute provides that jurisdiction of causes thereunder shall be in the courts of the United States ''concurrent with that of the courts of the several states,'' thus conferring complete jurisdiction upon the State courts, and the presumption should be indulged that Congress intended that the jurisdiction of State courts shall be exercised in accordance with the well-established doctrine stated by Prof. Minor, that rules of evidence, as well as other matters relating to the remedy, are controlled by the laws of the forum. The Federal statute does not attempt to prescribe any form of remedy or any rule of evidence. Negligence is made the test of liability, but the method of proving it is left to existing laws in force where the trial of the issue is conducted. Our statute, and the provision of the Constitution on which it is based, undertook, it is true, to declare absolute liability on the part of the railroad company ''for all damages to persons and property done or caused by the running of trains,'' but this court interpreted the provision to create only a *prima facie* case against a railway company where injury by the operation of a train is shown, and to cast the burden upon the company

to establish due care.  *Little Rock & Fort Smith Rd. Co.* v. *Payne,* 33 Ark. 816; *Railway Company* v. *Taylor,* 57 Ark. 136; *St. Louis, I. M. & S. Ry. Co.* v. *Neely,* 63 Ark. 636; *Little Rock & Fort Smith Ry. Co.* v. *Blewitt,* 65 Ark. 235.

Being merely a rule of evidence, it falls within the doctrine that the laws of the forum govern.  Matters relating to modes of procedure, and rules of evidence established by State authority, are not displaced "merely because the right enforced is one conferred by the law of the United States." *Minneapolis & St. Louis Rd. Co.* v. *Bombolis,* 241 U. S. 211.

It can not be rightly said that our statute, as interpreted by this court, is unreasonable so as to make it a rule of law fixing liability instead of a rule of evidence whereby the facts upon which liability rests are to be proved.  It is based on the theory, undoubtedly applicable in most instances, that the circumstances surrounding an injury inflicted in the operation of a train are matters largely, if not exclusively, within the knowledge of the trainmen who are in the service of the company, and it is deemed to be not an unwise or unfair policy to place the burden of proof on the company by compelling it to disclose the facts in order to clear itself of the charge of negligence.  This is not tantamount to making the ability of the company to produce proof of innocence the test of liability for an injury inflicted, but it leaves the test where the Federal statute places it, and merely prescribes one of the methods by which the issue is to be determined.  Nor does the absence of local rules of evidence or procedure tend to destroy uniformity in the enforcement of rights under the Federal statute.  On the contrary, the utmost confusion will arise if our courts are required to follow one rule of evidence in the trial of a cause under the Federal statute and another in similar cases arising under the common law or local statutes.  If the Federal statute had prescribed a rule of evidence to be followed in all trials under it, then it would control, of course, regardless of

the confusion which might follow, for the will of the law-makers is supreme in that regard; but when the Federal statute is silent on that subject, we ought, as before stated, to presume that the framers of the statute did not intend to displace local rules of evidence. We should, at any rate, adhere to our own rules of evidence until the doubt concerning their applicability is removed by a decision of the Supreme Court of the United States.

The majority seems to be influenced largely by the decision in *Seaboard Air Line Railway* v. *Horton,* 233 U. S. 492, but a careful reading of the opinion in that case shows clearly, I think, that the point decided has no bearing whatever on the question we now have under discussion. In the trial of that case the State court followed, as the test of liability, a local statute which in effect made the employer the guarantor of the servant's safety, and the Supreme Court of the United States merely held that, negligence being the test of liability under the Federal statute, a local statute had no application. That is entirely different from the question of observing local rules of evidence.

Mr. Justice HUMPHREYS authorizes me to say that he concurs in the views here expressed.